**FILED**

**December 7, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 7:46 AM**



## TENNESSE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | |
|---|---|
| **Claretha Smith,** ) | **Docket No.: 2016-01-0079** |
| **Employee,** ) | |
| **v.** ) | |
| **Eaton Electrical,** ) | **State File No.: 77714-2015** |
| **Employer,** ) | |
| **And** ) | |
| **Old Republic Insurance Company.** ) | **Judge Audrey A. Headrick** |
| ) | |

## EXPEDITED HEARING ORDER

This matter came before the Court on November 8 2016, on a Request for Expedited Hearing filed by Claretha Smith pursuant to Tennessee Code Annotated section 50-6-239 (2015). The central legal issue is whether Ms. Smith would likely prevail at a hearing on the merits in rebutting the statutory presumption of correctness afforded to the authorized treating physician's causation opinion regarding her right-shoulder condition. If so, the question turns to whether she is entitled to medical and temporary disability benefits. Based on the proof presented at this time, the Court holds Ms. Smith is not likely to prevail at a hearing on the merits because she failed to rebut the statutory presumption of correctness and failed to properly plead her claim.[1] Accordingly, the Court denies her request for medical and temporary disability benefits.

### History of Claim

Ms. Smith, an assembly worker, alleged she sustained a right-shoulder injury when she fell while walking at Eaton Electrical due to a rug sliding underneath her. According to the Petition for Benefit Determination (PBD), the accident occurred on July 24, 2015.[2] In her affidavit, Ms. Smith identified the date of the fall as January 21, 2015.

---

[1] A complete listing of the technical record and exhibits is attached to this Order as an appendix.

[2] On two separate occasions, Ms. Smith filed Petitions for Benefit Determination providing a July 24, 2015 date for a fall that occurred at Eaton. However, as the proof demonstrated, the July 24, 2015 claim was related to Ms. Smith's air gun usage.

1

At the Expedited Hearing, Ms. Smith testified she was not sure when she fell in January 2015.

Michael Patterson, Human Resource Manager at Eaton, testified that Ms. Smith submitted a "Near Miss Report" regarding a fall at work in January 2015, which started a safety investigation by "Jim," the Safety Manager. Mr. Patterson stated that the updates he received from Jim during the investigation indicated Ms. Smith reported "soreness" and that she was "improving." If an employee requests medical treatment during the safety investigation, Mr. Patterson stated he offers a panel of physicians. Ms. Smith did not request medical treatment, thus he provided no panel for the January incident. In July, Ms. Smith reported a shoulder injury. She told Mr. Patterson that using an air gun on the assembly line caused her shoulder pain. In response, Mr. Patterson provided Ms. Smith with a Physician Selection Form from which she chose U.S. HealthWorks of TN, Inc. On the Physician Selection Form, Ms. Smith wrote that "air gun 7242" was the cause of her injury. She also wrote, "When I move my shoulder it hurt [sic] really bad at all movement."

Ms. Smith submitted limited medical records to the Court. Medical records from HealthWorks consisted solely of three work status forms. (Ex. 2.) Ms. Smith received treatment at HealthWorks until the medical provider referred her to an orthopedic surgeon following an MRI.[3] (Ex. 2.) Eaton provided Ms. Smith with a panel of orthopedic surgeons from which she selected Dr. Rickey Hutcheson. (Ex. 7.) The two pages of records indicate that Dr. Hutcheson diagnosed Ms. Smith with right-shoulder impingement syndrome. (Ex. 4.) The parties did not submit Dr. Hutcheson's office note, so the record is silent regarding the history provided to him by Ms. Smith and whether he addressed causation.

Ms. Smith filed a second Petition for Benefit Determination with the Bureau because she was not satisfied with Dr. Hutcheson's treatment, and Eaton offered her a second panel of orthopedic surgeons. (Ex. 7.) She selected Dr. Barry Vaughn from the panel and saw him in March 2016. According to the treatment records, Ms. Smith told Dr. Vaughn she "was on the job [at] Eaton Electrical and I fell coming in door to work and I through [sic] my right elbow up to protect myself, and I may have injured it even a couple of months prior to that after using some guns at work and passing cases." (Ex. 5.) In addition to examining Ms. Smith, Dr. Vaughn indicated he reviewed the following: a January 21, 2015, Event Report; a July 24, 2015 Report of Injury; records of Dr. William Stanbery, primary care physician; records of U.S. HealthWorks; records of Dr. Rickie Hutcheson; physical therapy records; a November 25, 2015 MRI; and, Eaton's video job description. *Id.*

Dr. Vaughn referred to Ms. Smith as a "poor historian." *Id.* He noted the records indicated her fall occurred in January 2015 although her report of shoulder pain was not

---

[3] The MRI report indicates Ms. Smith reported a history of chronic symptoms "with no known injury." (Ex. 3.)

2

until September 2015. Dr. Smith also noted Ms. Smith's "initial report of shoulder pain indicated 'overuse' as cause of symptoms." *Id.* He diagnosed her with rotator cuff tendonitis, AC arthritis, and impingement syndrome. Dr. Smith opined that Ms. Smith's "radiographic findings and history of prior treatment with Dr. Voytik [in 2010 for her right shoulder] would indicate that this is primarily a degenerative condition and not related to a work injury." *Id.* Eaton denied Ms. Smith's claim.

After the denial, Ms. Smith asked Dr. Stanbery, her primary care physician, to refer her to Dr. Todd Grebner. Ms. Smith saw Dr. Grebner in May 2016 and told him she fell on her right shoulder a year ago in January when a rug slipped out from under her at work. (Ex. 6.) She revealed to Dr. Grebner that "she filed this in July when she started having acute pain after they put her on the assembly line." *Id.* Dr. Grebner later performed surgery after diagnosing her with arthritis of the acromioclavicular joint, rotator cuff syndrome, impingement syndrome and bicipital tendinitis. *Id.* Based on the history Ms. Smith provided to him, Dr. Grebner opined in a "To Whom it May Concern" letter that "[t]he mechanism of injury is consistent with the clinic findings." *Id.* He also opined that, "the fall at work resulted in and/or exacerbated her right shoulder problem." *Id.*

Ms. Smith testified she had forgotten about her fall in January 2015 until co-workers reminded her about it in December 2015. In her affidavit, Ms. Smith explained:

> But the strange thing about [the fall] was I had forgot about and couldn't remember it or when it happen but when the doctor at HealthWorks ask [sic] me had I fell or hit on something. I couldn't think of nothing but after I got back to work and tell [sic] some of the employees about the pain some [of] them ask me did I not remember I had fell coming in the front door one morning when the rug slid out from under me.

(Ex. 1.) At the hearing, Ms. Smith stated she "started having flashbacks" after her co-workers reminded her about the fall.

On cross-examination, Ms. Smith testified she now recalls the details of her fall. She stated the rug at Eaton slid from beneath her causing her to fall face forward with her right hand up towards her face. Ms. Smith believes she blacked out for a few seconds and cried afterwards. She stated she told her supervisor the next day about the fall and thought he would convey that information to Human Resources. However, Ms. Smith also testified that her shoulder did not really bother her until July when she began working on the assembly line. Between January and July 2015, Ms. Smith saw Dr. Stanbery, her primary care physician, on three different occasions. She acknowledged she did not tell him about her fall or complain about her shoulder because her "shoulder was not really hurting" during that time and she was there to see him for other reasons.

3

Ms. Smith seeks medical benefits and temporary disability benefits for her right-shoulder condition. Although the two Petitions for Benefit Determination she filed identify her injury date as July 24, 2015, she argued she injured her shoulder when she fell at work in January 2015. Ms. Smith relied upon the medical opinion of Dr. Grebner, an unauthorized physician. Eaton argued Ms. Smith did not meet her burden of proof in establishing that she sustained a compensable injury. It further argued that the proof is uncontroverted that Dr. Vaughn, her second panel physician, opined that her shoulder condition is not related to a work injury. Therefore, Eaton requested that the Court deny Ms. Smith's request for benefits.

## Findings of Fact and Conclusions of Law

### General Legal Principles

The following legal principles apply to this case. Ms. Smith need not prove every element of her claim by a preponderance of the evidence in order to recover medical and/or temporary disability benefits at an Expedited Hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, she must come forward with sufficient evidence from which this Court might determine she is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2016). This lesser evidentiary standard does not relieve Ms. Smith of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an Expedited Hearing, but "allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

In order for an injury to be compensable, it must be accidental. Under the Tennessee Workers' Compensation Law, an injury is accidental "only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(14)(A) (2016). Ms. Smith must show, to a reasonable degree of medical certainty, that the incident "contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." *Id.* at § 50-6-102(14)(C). Likewise, an aggravation of a pre-existing condition is compensable only if "it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." *Id.* at § 50-6-102(14)(A). Further, the causation opinion of the panel physician, Dr. Vaughn, "shall be presumed correct but this presumption shall be rebuttable by a preponderance of the evidence." *Id.* at § 50-6-102(14)(E) (2016).

4

*Presumption of Correctness*

Here, the parties do not dispute that Ms. Smith fell at work in January 2015. Instead, the parties dispute whether Ms. Smith would likely prevail at a hearing on the merits in rebutting the statutory presumption of correctness afforded to the authorized treating physician's causation opinion that the January fall did not cause her right-shoulder condition.

Although Ms. Smith fell in January, she did not request any medical treatment until July. Further she did not disclose her fall to Dr. Stanbery, her primary care physician, because her shoulder did not bother her during that time. When she finally requested medical treatment, she attributed the cause of her pain to use of an air gun on the assembly line. It was not until December that Ms. Smith recalled, at the prompting of co-workers, that she had fallen in January.

Ms. Smith is a poor historian. In her affidavit and testimony at the Expedited Hearing, Ms. Smith described the fall as a traumatic occurrence that caused her to black out for a few seconds and to cry afterwards. However, the fact that she did not mention her fall or right-shoulder complaints to her primary care physician between January and July, as well as the fact that she completely forgot about the fall until December, indicate otherwise.

After Ms. Smith became dissatisfied with the treatment provided by Dr. Hutchison, she selected Dr. Vaughn from a panel. Dr. Vaughn opined her shoulder condition "is primarily a degenerative condition and not related to a work injury." (Ex. 5.) Under the Workers' Compensation Law, Ms. Smith must rebut the presumption of correctness regarding the medical opinion of Dr. Vaughn in order to prevail. To do so, Ms. Smith submitted the opinion of Dr. Grebner who performed Ms. Smith's right-shoulder surgery. He opined that, "the fall at work resulted in and/or exacerbated her right shoulder problem." (Ex. 5.) The Court holds that the mere submission of the opinion of Dr. Grebner is not sufficient to overcome the statutory presumption in favor of Dr. Vaughn. *See Sanker v. Nacarato Trucks, Inc., et al.*, No. 2016-06-0101, 2016 TN Wrk. Comp. App. Bd. LEXIS 27, at *11-13 (Tenn. Workers' Comp. App. Bd. July 6, 2016).

Aside from Ms. Smith's failure to overcome the statutory presumption in favor of Dr. Vaughn, the basis of her claim for benefits is from a fall at work in January 2015. However, Ms. Smith did not file a workers' compensation claim for benefits resulting from a January injury. As pled, her claim concerns only the alleged injury in July 2015 from using an air gun. Further, although Ms. Smith mentioned her air gun usage to Dr. Vaughn, he still opined that her right-shoulder condition was not related to a work injury. Therefore, the Court also holds Ms. Smith is unlikely to prevail at a hearing on the merits because she failed to properly plead her claim.

Accordingly, the Court holds Ms. Smith is unlikely to prevail at a hearing on the merits in rebutting Dr. Vaughn's causation opinion that her right-shoulder condition is not related to a work injury. Additionally, the Court holds she is unlikely to prevail at a hearing on the merits due to her failure to properly plead her claim. Therefore, the Court denies her request for medical and temporary disability benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Smith's requested relief is denied at this time.

2. This matter is set for a Status Hearing on February 7, 2017, at 10:00 a.m., Eastern Time.

    **ENTERED this the 7th day of December, 2016.**

**Judge Audrey A. Headrick**
**Court of Workers' Compensation Claims**

Status Hearing:

A Status Hearing has been set on February 7, 2017, at 10:00 a.m. Eastern Time, with **Judge Audrey A. Headrick, Court of Workers' Compensation Claims. You must call 423-634-0164 or toll-free at 855-383-0001 to participate in the Status Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:

1. Affidavit of Claretha Smith;
2. HealthWorks Work Status forms dated October 26, 2015, November 9, 2015, and November 30, 2015;
3. Right Shoulder MRI report from Cleveland Imaging performed on November 25, 2015;
4. Physical therapy order of Dr. Rickey Hutcheson dated January 12, 2016, and Attending Physicians Report dated January 12, 2016;
5. Medical record of Dr. Barry Vaughn dated March 29, 2016;
6. Medical records of Dr. Todd Grebner, including letter dated September 13, 2016;
7. Three panels;
8. Physician Selection Form dated September 24, 2015; and,
9. Handwritten statements Debra Dodd and Dalphaela Scruggs (For Identification Purposes).

Technical record:[4]

1. Petition for Benefit Determination, filed February 3, 2016;
2. Petition for Benefit Determination (on our current form), filed July 19, 2016;
3. Dispute Certification Notice, including additional defenses, filed September 6, 2016;
4. Request for Expedited Hearing, filed October 3, 2016; and,
5. Notice of Expedited Hearing, filed October 18, 2016.

---

[4] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 7th day of December, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Claretha Smith, Self-Represented Employee | X | | X | 3892 Rollingbrook Circle NE Cleveland, TN 37323 sweetd22079@yahoo.com |
| Reed Martz, Employer's Attorney | | | X | reed@freelandmartz.com |

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov